IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTIN WALSH[1], Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR,<br><br>        Plaintiff,<br><br>v.<br><br>RANY KCHAO, individually, and KCHAO AND KCHAO HOSPITALITY, LLC, d/b/a WHISPERING PINES BED & BREAKFAST, a corporation,<br><br>        Defendants. | Case No. CIV-18-807-D |

## ORDER

Before the Court are cross-motions for summary judgment filed by Defendants, Rany Kchao and Kchao and Kchao Hospitality, LLC [Doc. No. 51], and Plaintiff Martin Walsh, Secretary of Labor [Doc. No. 52]. Both motions are fully briefed and at issue. *See* Pl.'s Resp. Br. [Doc. No. 57]; Def.'s Reply Br. [Doc. No. 60]. *See also* Def.'s Resp. Br. [Doc. No. 58]; Pl.'s Reply Br. [Doc. No. 59].

This case involves claims by the United States Department of Labor (DOL) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, that Defendants Kchao and Kchao Hospitality, LLC, d/b/a Whispering Pines Bed & Breakfast (Whispering Pines) and Rany Kchao violated the FLSA by failing to pay minimum wages to employees, failing to pay overtime compensation, failing to maintain required records, and unlawfully retaliating

---

[1] Pursuant to FED. R. CIV. P. 25(d), Secretary Martin Walsh is substituted as a party because he is Eugene Scalia's successor as the United States Secretary of Labor.

against former employees. Plaintiff seeks injunctive relief, an assessment of unpaid wages and compensation owed to Defendants' employees, and liquidated damages.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P.56(c)(1)(A).

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment,

the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## FACTUAL BACKGROUND

Whispering Pines is a bed and breakfast in Norman, Oklahoma. Rany Kchao is the general manager and part-owner together with his wife, Thavory Kchao, of Whispering Pines. The Kchaos' residence is on the same property as the bed and breakfast, and multiple Kchao family members both lived at the residence and worked at Whispering Pines. As general manager, Mr. Kchao's duties included establishing employment policies and procedures, hiring and firing staff, setting employee rates of pay, handling employee time records, and communicating with Whispering Pines' accountants regarding payroll. Mr. Kchao represented Whispering Pines during DOL's investigation and provided information regarding pay practices and recordkeeping.

Beginning in March 2017, DOL investigated Whispering Pines' compliance with the FLSA's requirements regarding minimum wages, overtime compensation, and recordkeeping. Cheryl Masters, an investigator from DOL's Wage and Hour Division, visited Whispering Pines, made written requests for payroll and time records, communicated with Mr. Kchao regarding requested documents, and interviewed Whispering Pines managers and employees.

Defendants' employees handled goods that had been moved in interstate commerce, including imported food, wine, and beer, Post-It notes from Kentucky, and artificial sweetener from Virginia. Whispering Pines had an annual gross sales volume less than

3

$500,000 in 2014 but more than $500,000 in 2015, so Masters used the rolling quarters methodology set forth in 29 C.F.R. § 779.266(b). Masters calculated the gross sales from the four quarters immediately preceding the final quarter in 2015, and that total exceeded $500,000. She thus determined that Defendants were covered by the FLSA beginning on October 1, 2015. Defendants dispute Masters' calculations and argue they were not covered by the FLSA until July 1, 2016.

In her investigation, Masters learned that Defendants paid Kchao family members that worked at Whispering Pines on a salary basis. Defendants kept no records of the hours these relative employees worked. Masters learned Defendants also followed these practices in regard to one non-relative employee, At Toem, who had recently immigrated to the United States from Cambodia, the Kchaos' native country. The Kchaos agreed to sponsor Toem's immigration visa, and Toem lived with the Kchaos. Toem also shared meals with the Kchaos.

Toem started working at Whispering Pines in May 2015. From October 1, 2015[2] to November 8, 2015, Defendants paid her a bi-weekly salary of $450, and from November 9, 2015 to June 10, 2016, her final thirty-one weeks working for Defendants, they paid her a bi-weekly salary of $500. Defendants admit they did not make, keep, or maintain time records for Toem, and although the Kchaos provided Toem lodging and food, the Defendants kept no record of deductions from Toem's wages for such expenses. Their explanation for this is that they considered Toem family and treated her the same as the

---

[2] This is the date range relevant here because DOL asserts that it can establish Defendants were covered by the FLSA starting the final quarter of 2015.

Kchao family employees. Since there were no time records, Masters reconstructed Toem's average hours worked per week. Based on employee and management interviews, Masters estimated that Toem worked an average of 92.5 hours per week. Defendants deny that Toem worked more than 40 hours in any week she was employed.

Defendants paid all other non-family employees on an hourly basis, and they kept time records for the work performed by these employees. But based on the employee and manager interviews, Masters determined some time records were inaccurate, particularly the time records for employee Desiree Matthews. Masters estimated that Matthews, a former employee who worked at Whispering Pines for three months in 2016, worked more hours than her timesheets indicated.[3] Masters reconstructed Matthews' workweeks and estimated the number of hours she worked each week. Defendants deny that Matthews worked more than 40 hours in any week she was employed.

Based on these reconstructed and estimated workweek hours, Masters calculated the amount of backpay due to Toem and Matthews for FLSA minimum wage and overtime compensation violations using the methods described in her affidavit. According to Masters, Defendants owe Toem a total of $22,763.70 and Matthews a total of $1,770.38 in back wages.

On May 24, 2016, the parties entered a tolling agreement that prevented the statute of limitations from running on any FLSA claim that accrued after October 1, 2014 until 120 days after the agreement was terminated. Either party could terminate the agreement

---

[3] Matthews was responsible for filling out her own timecards. Masters asserts that Defendants told Matthews to clock out while she was still working. Defendants deny doing this.

at any time, and Plaintiff terminated it on April 19, 2018. Plaintiff filed his complaint in this matter on August 21, 2018.

On October 30, 2018, Defendants and Thavory Kchao brought a defamation action against Toem and another former employee, Beverly Marlow, in an Oklahoma state court. They alleged that Toem and Marlow made false and misleading statements to federal investigators that resulted in a Federal Bureau of Investigation (FBI) investigation of the Kchaos, including an investigation for human trafficking and forced adoption (regarding a child born to Toem). The Defendants contended that the negative publicity resulting from the investigation resulted in lost revenues and reputational damages. On November 19, 2020, the Oklahoma state court entered summary judgment in favor of Toem and Marlow and dismissed Defendants' claims against them. The court determined that the former employees' statements were subject to an absolute privilege provided by state law and that they were thus immune from a defamation suit.

## DISCUSSION

**A.  FLSA Liability**

Defendants are both employers. The FLSA imposes duties on employers with respect to compensation of employees engaged in commerce or employed by an enterprise engaged in commerce. In relevant part, an "employer" as defined by FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). As the entity that employed Toem and Matthews, Whispering Pines plainly was their employer. The undisputed facts also establish that Mr. Kchao acted in the interest of an employer in relation to Whispering Pines' employees. *See,*

*e.g., Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) ("corporate officer principally in charge of directing employment practices, such as hiring and firing employees, requiring employees to attend meetings unpaid, and setting employees' wages and schedules" and "thus instrumental in 'causing' the corporation to violate the FLSA" was personally liable for violations). The Court finds that Defendants were both "employers" of Whispering Pines' employees, and thus, both Defendants are potentially liable for FLSA violations that occurred in the operation of Whispering Pines.

As a threshold element to its claims, Plaintiff must establish that the Defendants were covered by the FLSA as an enterprise engaged in commerce. An "enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A)(i) and (ii).

Defendants contend that they do not qualify under these provisions because, according to them, Whispering Pines did not have an annual gross income of $500,000 until July 1, 2016, after Toem's employment ended.[4] They argue that taxes should not have

---

[4] Even if this is accurate, Defendants would qualify as an enterprise engaged in commerce at least one month before Matthews' employment ended.

7

been included in the calculations and that since § 203(m)(2)(B) prohibits employers from keeping tips received by employees, tips should not have been included in the calculation either. But Department of Labor regulations provide that gross annual volume should be calculated based on the price a customer actually paid for the relevant good or service, which would include tips paid to employees. *See* 29 C.F.R. §§ 779.258, 779.259(a). The tips were thus appropriately included in the calculations.

Therefore, Plaintiff has established that, at least as of January 1, 2016, Defendants were an enterprise engaged in commerce under the FLSA. Even if the calculations excluded taxes paid by Whispering Pines, they would still show a total volume of sales exceeding $500,000 for 2015. *See* [Doc. No. 58-9 at p. 12]. Enterprise coverage would thus be established as of January 1, 2016. By showing tips were properly included in the calculations, Plaintiff has successfully established enterprise coverage at least five months before Toem's employment ended and seven months before Matthews' employment ended.

Plaintiff, nevertheless, asserts it can establish enterprise coverage as of October 1, 2015. Plaintiff appears to concede that the inclusion of taxes in the calculation is necessary to reach the threshold income amount for Defendants to have been covered as of October 1, 2015. But neither Plaintiff nor Defendants have met their burdens on summary judgment to succeed on the issue of whether the taxes paid by Whispering Pines should have been included in the gross income calculations. "[E]xcise taxes which (a) are levied at the retail level and (b) are separately stated and identified in the charge to the customer at the time of sale need not be included in the calculation of the gross or dollar volume of sales." 29

8

C.F.R. § 779.261. Defendants have not provided evidence beyond their own internal Profit and Loss Sheets that shows Whispering Pines paid taxes to any taxing authority, nor have they provided evidence showing such taxes were separately stated as required in 29 C.F.R. § 779.264. The evidence they do provide is insufficient to show the calculations were erroneous as a matter of law. But it is sufficient, however, to show a genuine dispute of material fact to prevent Plaintiff from succeeding on summary judgment regarding this issue. Proof of enterprise coverage—including Defendants' annual gross income—is an element of Plaintiff's cause of action that must be proved to the finder of fact.

**B.     Timeliness of Plaintiff's Claims**

Defendants argue that Plaintiff's FLSA claims are time-barred under the statute of limitations because Plaintiff filed his claims beyond the time allowed under the tolling agreement entered by the parties. Under 29 U.S.C. § 255(a), a FLSA claim accrues when the employer fails to pay the required compensation. *See* 29 C.F.R. § 790.21(b). Toem worked for Defendants from May 2015 through June 2016, and Matthews worked for Defendants from May 2016 through July 2016. The applicable statute of limitations depends on whether Defendants' FLSA violations were willful. 29 U.S.C. § 255(a). If so, a three-year limitation applies, but if not, a two-year limitation applies. *Id.* The Court need not resolve the issue of willfulness to determine whether Plaintiff's claims are time-barred because Plaintiff complied with a valid tolling agreement and brought its cause of action within either limitation period.

On May 24, 2016, the parties entered a tolling agreement. For purposes of computing the time limit in § 255(a), the agreement excluded the period from October 1,

2014 through 120 days[5] following the sending of a notice to terminate the tolling agreement. Either party could terminate the agreement at any time, and Plaintiff terminated it on April 19, 2018. The limitations period for Plaintiff's claims thus did not start running until August 18, 2018, 120 days after Plaintiff's notice to terminate the tolling agreement.

Defendants argue the tolling agreement required Plaintiff to bring his cause of action before the expiration of the 120-day period. To support this reading, Defendants point to the notice of termination and assert that Plaintiff stated he was required to file his complaint within 120 days of the notice. [Doc. No. 51 at pp. 9–10]. Nothing in the notice supports that contention; Plaintiff stated he would file his complaint *after* the notice of termination period. [Doc. No. 51-13]. By the plain language of the tolling agreement, the tolled period—October 1, 2014 to August 17, 2018—is not included in computing the time limited by the statute of limitations. Therefore, the limitations period in § 255 did not begin to run until August 18, 2018. Plaintiff filed this suit three days later, on August 21, 2018, which was clearly within both limitations periods provided in § 255(a).

Defendants argue that this reading of the tolling agreement is unreasonable as it would give Plaintiff unlimited time to investigate Defendants and file FLSA claims. [Doc. No. 51 at p. 11–12]. But the tolling agreement afforded both parties the right to terminate it by providing a notice of termination. Defendants could have terminated the agreement at any time, and the statute of limitations would have started running on Plaintiff's claims.

---

[5] The tolling agreement included inconsistent time periods for the tolling of the statute of limitations after the agreement was terminated. One provision stated 90 days, but a different provision stated 120 days. The parties' agreed to follow the 120-day period.

10

This is not an indefinite tolling agreement because Defendants had the power to end it. As such, the Court finds Plaintiff's FLSA claims are timely.

## C.     Admissibility of Masters' Wage Calculations

Defendants argue Masters' wage calculations must be stricken because, in making them, she relied on anonymous employee statements, which Defendants contend are hearsay, and not her personal knowledge. But these statements are not hearsay pursuant to FED. R. EVID. 801(d)(2)(D) because Plaintiff offers them against Defendants and they were made by Defendants' own employees on matters like wages and working hours, which are within the scope of the employee-employer relationship while it existed. An affidavit used in support of, or opposition to, a summary judgment motion must conform to the requirements of FED. R. CIV. P. 56(c). Facts set forth in an affidavit may be considered so long as they may ultimately be presented at trial in an admissible form. Statements of employees that meet the requirements of FED. R. EVID. 801(d)(2)(D) could be admitted at trial. These anonymous employee statements accordingly constitute evidence in a form that would be admissible at trial as they are not hearsay. *See Scalia v. Ghosn*, 451 F. Supp. 3d 1215, 1220–21 (W.D. Okla. 2020).

Defendants further challenge Plaintiff's invocation of the informer's privilege, which protects the identities of the anonymous employees. The employees interviewed by Masters and referenced in her affidavit are anonymous because Plaintiff has asserted his informer's privilege, which allows him "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" to further and protect "the public interest in effective law enforcement." *Roviaro v.*

11

*United States*, 353 U.S. 53, 59 (1957). This privilege "protect[s] employees who cooperate with the Department of Labor in investigations about FLSA violations." *Brock v. Gingerbread House, Inc.*, 907 F.2d 115, 117 (10th Cir. 1989). "The privilege is qualified. The interest of the government in protecting its sources must be weighed against the defendants' need for the information." *Usery v. Ritter*, 547 F.2d 528, 531 (10th Cir. 1977). Thus, "[w]here the disclosure of an informer's identity . . . is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61.

Prior to their response to Plaintiff's motion for summary judgment, Defendants did not challenge Plaintiff's assertion of the privilege, and they never moved the Court to compel disclosure of Masters' interview records. Based on the summary judgment motions and the arguments therein, the Court is unable to weigh the parties' respective interests and determine whether disclosure is warranted. Typically, such balancing requires an in camera review. *See United States v. Moralez*, 908 F.2d 565, 569 (10th Cir. 1990). The Court thus cannot rule on whether the informer privilege is improperly asserted on the current record.

**D.   FLSA Violation**

Both Plaintiff and Defendants move for summary judgment on Plaintiff's FLSA minimum wage and overtime violation claims regarding Toem, but only Plaintiff moves for summary judgment for the FLSA claims regarding Matthews.

**1.  Wage Deductions**

Defendants assert that Plaintiff cannot succeed on his FLSA claims regarding Toem because the wages it paid her—including room, board, and other facilities provided to her—were sufficient under the FLSA. Plaintiff asserts that since Defendants did not follow

the FLSA's requirements for claiming credits for room, board, and other facilities, they are not entitled to credit these items toward Toem's wages now. Defendants kept no contemporaneous record of any addition to or deduction from Toem's wages for lodging and meal expenses. Instead, they attempted to provide, well after Toem's employment ended, an estimate of the total food and housing expenses they incurred because they were housing and feeding Toem. FLSA implementing regulations provide that

> an employer who makes deductions from the wages of employees for board, lodging, or other facilities . . . furnished to them by the employer or by an affiliated person, or who furnishes such board, lodging, or other facilities to employees as an addition to wages, shall maintain and preserve records substantiating the cost of furnishing each class of facility . . . .

29 C.F.R. § 516.27(a) (internal quotations omitted). Further. If those deductions "result in the employee receiving less in cash than the applicable minimum hourly wage," the employer must maintain records showing those deductions "on a workweek basis." *Id.* (b)(1). The undisputed evidence shows that Defendants provided no records showing deductions to Toem's wages for lodging and meal expenses. As such, they may not claim those credits now. *See Donovan v. I & J, Inc.*, 567 F. Supp. 93, 109 (D.N.M. 1983) ("An employer seeking a § 203(m) wage deduction has the obligation, under the regulations, to keep records concerning the costs.").

### 2. Minimum Wage and Overtime Violations

Plaintiff asserts that the uncontroverted evidence establishes that, as a matter of law, Defendants violated the minimum wage and overtime requirements of the FLSA. Under the FLSA, employers must pay non-exempt employees at least $7.25 per hour. 29 U.S.C. § 206. The FLSA further requires employers to pay a rate not less than one and one-half

times the regular rate for an employee's workweek hours in excess of forty. § 207. Section 213 lists exemptions to those requirements, but they do not apply in this case.[6]

Defendants argue that they did not violate these provisions in regard to Toem because they reached an agreement with her under 29 C.F.R. § 785.23 that should be recognized and accepted by the Court. Section 785.23 allows employers to enter an agreement with an employee regarding how to determine the number of hours the employee works; it is applicable when the employee resides on the employer's premises, making it "difficult to determine the exact hours worked." *Id.* Only "reasonable agreement[s]" that "take[] into consideration all of the pertinent facts" are authorized in § 785.23. These agreements are not an exemption from the overtime requirements of the FLSA; instead, they should provide a method for counting the number of hours the employee works. *See Braziel v. Tobosa Developmental Servs.,* 166 F.3d 1061, 1063 (10th Cir. 1999); *see also Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 942 (9th Cir. 2004).

Here, Defendants assert such an agreement existed: "Toem would work in exchange for her salary." [Doc. No. 58 at 32]. It is Defendants' burden to prove this agreement was reasonable under § 785.23. Clearly Toem agreed to work in return for her salary, but Defendants offer no evidence that would suggest this agreement took into consideration all pertinent facts, such as a method for how to calculate how many hours Toem actually

---

[6] Although Defendants believed Toem was exempt from the FLSA because they provided her food and housing and treated her as family, there is no exception to the FLSA's minimum wage and overtime requirements for family members. Plaintiff points out that, as a policy matter, the Wage and Hour Division at the DOL does not supervise payment of back wages to an employer's family members unless the family member has stated a desire for payment of back wages due.

14

worked or her overtime compensation. The Court finds Defendants' asserted agreement legally and factually deficient, and it will not be considered in resolution of either party's motion for summary judgment.

Plaintiff bears the burden to prove the amounts of unpaid back pay and overtime compensation due to employees during the relevant time period. Where an employer fails to keep adequate or accurate records of employees' work hours, however, Plaintiff can satisfy this burden by proving that employees "performed work for which [they were] improperly compensated" and by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85-86 (10th Cir. 1983). Once the plaintiff satisfies that burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88.

For the minimum wage and overtime claims as to Toem, Plaintiff has satisfied the first prong of the analysis under *Mt. Clemens* by showing Toem performed work for which she was not properly compensated and producing evidence of the approximate amount due for uncompensated work by Toem as a matter of reasonable inference. Defendants are thus not entitled to summary judgment on these claims.

But Defendants meet their burden by producing evidence to negate the reasonableness of that inference. Defendants contest Masters' reconstruction of the weekly

15

average of hours Toem worked. They point to two depositions of Toem, one from a separate lawsuit[7] and another from this suit. Toem testified that she usually finished work on Sundays around 3:00 p.m. because the restaurant was closed, but Masters' calculation estimates that Toem worked until 11:00 p.m. on those days. Further, Toem gave unclear testimony on when she typically finished working on other days. She stated she usually went home around 9:00 p.m., but she also explained that, depending on how busy the day was, she would complete her work at 8:00 p.m., 9:00 p.m., or even midnight. Masters estimated that, on average, Toem worked until 11:00 p.m. every day except Mondays. Though the Defendants provide no evidence of the precise amount of work performed by Toem, they do identify inconsistencies between Toem's testimony and Masters' calculations. They, therefore, raise genuine disputes of material fact that preclude summary judgment on the issue of backpay owed to Toem.

The minimum wage and overtime claims as to Matthews require the resolution of factual disputes, precluding summary judgment. First, Defendants deny Matthews' timecards are inaccurate. Second, Masters asserts that on some days Defendants told Matthews not to clock in or told her to clock out before she was finished working. But Defendants deny directing Matthews to clock out before she was finished working. The

---

[7] Plaintiff's retaliation claim is based on that suit, which was brought by the defendants in this case against Toem and Marlow in an Oklahoma state court. Plaintiff points out that Defendants never produced a copy of the transcript from Toem's deposition in that state court action. Plaintiff does not explicitly ask the Court to disregard the testimony from that deposition, and the Court will consider the deposition in ruling on the instant motions. The Court notes that most of the transcript is available in the parties' summary judgment motion exhibits filed in state court months before summary judgment motions were filed in this case.

conflicting testimony presents questions for the trier of fact. The Court is thus unable to decide that, as a matter of law, Plaintiff showed Matthews performed work for which she was not properly compensated.

Since Plaintiff has not proved that Defendants violated the FLSA, the Court must, necessarily, deny Plaintiff's motion for summary judgment on the issue of liquidated damages.

### 3. Recordkeeping Requirements

Plaintiff asserts that Defendants violated the FLSA's recordkeeping requirements as a matter of law. 29 U.S.C. § 211(c) sets forth the FLSA recordkeeping requirements. It requires employers to keep and preserve records pertaining to its employees' "wages, hours, and other conditions and practices of employment[.]" *See* 29 U.S.C. § 211(c). Pursuant to 29 U.S.C. § 217, the Secretary of Labor has authority to commence injunction proceedings against an employer suspected of violating any of the requirements referenced in Section 215. This includes recordkeeping violations under Section 211(c). *See* 29 U.S.C. § 215(a)(5).

Defendants admit they did not keep individualized time records for Toem. [Doc. No. 58 at p. 4]. They also kept no record of deductions from Toem's wages for meals and lodging. These omissions are sufficient to establish that Defendants violated the recordkeeping requirements of the FLSA as a matter of law.

**E.      Retaliation**

Under the familiar burden-shifting analysis applicable to retaliation claims under 29 U.S.C. § 215(a)(3), a plaintiff must first establish a prima facie case by showing:

> (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action.

*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997); *see also Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). If a prima facie case is established, "the burden of production shifts to the employer to offer a legitimate non-retaliatory reason for the adverse employment action." *Pacheco*, 365 F.3d at 1206. Once the employer produces evidence that would dispel the inference of retaliation, "the burden shifts back to the employee to show genuine issues of material fact exist regarding whether the employer's proffered reason is unworthy of credence." *Id*. at 1207.

The undisputed facts establish that Toem and Marlow engaged in activity protected by the FLSA when they gave statements to federal investigators to assist in DOL and FBI investigations. Plaintiff can establish the remaining prima facie elements by showing Defendants' defamation suit (1) lacked a reasonable basis in fact or in law and (2) was filed for a retaliatory motive. *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406-07 (10th Cir. 1992).

Defendants filed a defamation action in state court, alleging that Toem and Marlow made false statements that caused a law enforcement search of their business, negative press coverage, and a loss of revenue. Plaintiff asserts that the defamation suit was baseless

18

because Toem's and Marlow's statements were subject to an absolute privilege and because the claims may have been time-barred. The state court granted Toem's and Marlow's summary judgment motion and dismissed the case based on the state privilege; the court did not discuss the statute of limitations issue.

The parties argued the absolute privilege issue twice to the state court—first upon a motion to dismiss and, second, on summary judgment. Toem and Marlow continually asserted that Defendants could not maintain a defamation suit because their statements were made preliminary to or during judicial proceedings and were thus privileged under *Kierschstein v. Haynes*, 788 P.2d 941 (Okla. 1990). The court nevertheless denied Toem's and Marlow's motion to dismiss. But on summary judgment, the court held that the privilege covered Toem's and Marlow's statements. [Doc. No. 52-25 at p. 1]. It dismissed Defendants' claims against Toem and Marlow and certified the case for appeal. The case remains pending before the Oklahoma Court of Civil Appeals.

Having examined Defendants' state action, the Court has determined that the defamation claims against Toem and Marlow, while unable to survive summary judgment, were not so unsupported that the Court can label them baseless. Although the state court ultimately dismissed the claims by applying the *Kierschstein* privilege, Defendants legitimately attempted to establish their claims for relief, which were not based on an "indisputably meritless legal theory." *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1269 (D. Kan. 2019). Plaintiff therefore cannot establish the remaining prima facie elements of the FLSA retaliation claim. Defendants are entitled to summary judgment on the retaliation claim.

## CONCLUSION

For these reasons, the Court finds that genuine disputes of material facts preclude summary judgment, in favor of either party, on Plaintiff's FLSA minimum wage and overtime violation claims. The Court further finds that Plaintiff is entitled to summary judgment on his FLSA recordkeeping requirements violation claim. Finally, the Court finds Defendants are entitled to summary judgment on Plaintiff's FLSA retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 51] is **GRANTED IN PART**, as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No. 52] is **GRANTED IN PART**, as set forth herein.

**IT IS SO ORDERED** this 30th day of September, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge